UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. LISA WHEELER, | ) ) ) |
| Plaintiff/Relator, | ) ) |
| VS. | ) Civil Action No: SA-13-CA-4-XR ) |
| UNION TREATMENT CENTERS, LLC, ET AL., | ) ) ) ) |
| Defendants. | ) |

**ORDER**

The United States brings a claim for treble damages and civil penalties under the False Claims Act ("FCA"), alleging that the various Defendants in this case submitted, and caused and conspired with others to submit, false claims to the federal workers' compensation program ("FECA program") administered by the United States Department of Labor, Office of Workers' Compensation Programs ("DOL-OWCP"). Before the Court is the United States' Motion for Partial Summary Judgment on Count Two under the FCA against Defendants Garry Craighead and CCM&D Consulting, LLC (docket no. 183), and the United States' Motion to Strike Garry Craighead's Response or, in the alternative, for an extension of time to file a reply (docket no. 194). After careful consideration, the Court denies the motion to strike or alternative motion for extension of time to reply and grants the United States' motion for partial summary judgment on the FCA claim against Garry Craighead, but denies it as to CCM&D Consulting, LLC. The Court further awards treble damages as against Garry Craighead.

1

**Background**

This case was filed by Relator on January 3, 2013. After obtaining numerous extensions, the United States indicated its intent to intervene on March 11, 2015. The seal was lifted, and the United States filed its Complaint in Intervention on June 23, 2015. Defendants Garry Craighead and CCM&D Consulting LLC were served on June 25. Docket nos. 47, 49.

On December 4, 2015, Garry Craighead pled guilty to kickback and money laundering charges in connection with a scheme to defraud the FECA program. *United States v. Garry Wayne Craighead*, no. A:15-cr-348-SS (W.D. Tex.). On June 10, 2016, Judge Sparks rejected Craighead's attempt to withdraw his plea agreement and sentenced him. *Id.* docket no. 71. Craighead appealed on June 22, but later withdrew the appeal in September. *Id.* docket no. 86 (order granting motion to withdraw notice of appeal); *id.* docket no. 87 (Fifth Circuit judgment dismissing appeal pursuant to appellant's unopposed motion).

On June 20, 2016, attorney John Rivas moved to withdraw as counsel for Garry Craighead and CCM&D. Docket no. 126. The motion was granted on July 14, 2016, leaving these Defendants without counsel.

On June 9, 2017 the United States moved to re-open this case, which had been administratively closed. This Court re-opened the entire case on June 14, 2017, but stayed all claims against Christine Craighead due to her pending criminal case. This Court later ordered Garry Craighead and CCM&D to file answers. Docket no. 159.

On September 21, 2017, Craighead filed a motion to vacate under 28 U.S.C. § 2255 in his criminal case, which Judge Sparks denied on January 25, 2018. Craighead appealed the denial to the Fifth Circuit.

Garry Craighead filed an answer in this case on January 18, 2018. Craighead also filed a motion to dismiss, which this Court denied on March 27, 2018. CCM&D, which Craighead asserts is insolvent and cannot afford counsel, has not filed an answer and is technically in default.

The Court entered a scheduling order on March 29, 2018, and the United States filed this Motion for Partial Summary Judgment against Garry Craighead and CCM&D Consulting on July 25, 2018. An essential basis of the motion is the collateral estoppel effect of Craighead's guilty plea and its underlying factual basis. Garry Craighead filed a response on September 7, 2018, which the United States moved to strike on September 14, 2018 as untimely. The Court denies the motion to strike and the alternative motion for additional time to reply (docket no. 194).

In his response, Craighead noted his pending appeal of the denial of his 2255 motion. However, on October 11, 2018, the Fifth Circuit denied Craighead's motion for COA in his 2255 appeal. No. 18-50139. Thus, as of that denial, no appeals or 2255 actions remain pending in the Fifth Circuit challenging Craighead's guilty plea and criminal judgment.

**Analysis**

By its motion, the United States seeks summary judgment on Count Two of the Complaint in Intervention, a claim under the FCA, against Defendants Garry Craighead and CCM&D Consulting, LLC.[1] The FCA imposes civil liability and treble damages on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States government. 31 U.S.C. § 3729(a)(1)(A); *see also United States ex rel. King v. Solvay Pharmaceuticals, Inc.*, 871 F.3d 318, 324 (5th Cir. 2017). Count Two of the Government's

---

[1] The Government notes that, if summary judgment is granted on Count Two, it intends to dismiss the rest of its claims against Garry Craighead and CCM&D on the ground that any additional judgment is likely uncollectible due to Craighead's prison sentence, restitution debt, and other liabilities. Docket no. 183 at 2 n.3.

Complaint asserts a count under § 3729(a)(1)(A) of the FCA against all Defendants, alleging that they knowingly presented and caused others to present to an officer, employee, agent, or contractor of the United States false claims for payment from the FECA program, namely, false claims for "(a) services and supplies rendered to patients referred by defendants in exchange for unlawful remuneration in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(1), and (b) services and supplies rendered to patients to whom defendants paid unlawful remuneration in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(2)." Docket no. 26 ¶ 240.

The Government alleges that Craighead and CCM&D knowingly caused others to present false claims for payment to the FECA program in violation of the FCA. Specifically, the motion for partial summary judgment contends that Craighead solicited and received kickbacks, through CCM&D, in exchange for making referrals to Vidor Pharmacy (operated by Brian Haney) and Family Pharmacy (operated by Kevin Gray), in violation of the Anti-Kickback Statute ("AKS"), and the pharmacies then submitted false claims (because they were tainted by the kickback scheme) to FECA, in violation of the FCA. The Government describes the scheme as follows: (1) Haney and Gray agreed to pay Craighead for prescriptions; (2) in return, Craighead agreed to refer FECA patient prescriptions to Vidor and Family Pharmacies; (3) the pharmacies billed the FECA program for the prescriptions they allegedly filled for Craighead's patients; and (4) Haney and Gray paid Craighead, through CCM&D, a percentage of the funds the pharmacies received from DOL-OWCP for filling the prescriptions.

The Government asserts that Haney and Gray's pharmacies submitted numerous false claims tainted by AKS violations, for which they were reimbursed, and that between November 30, 2011 and January 2, 2014, Haney and Gray paid Craighead over $800,000 in kickbacks. Haney and Gray

were also charged with and pled guilty to violations of the AKS based on this scheme. *United States v. Brian David Haney*, A:16-cr-324-SS (W.D. Tex); *United States v. Kevin Michael Gray*, A:17-CR-84-SS (W.D. Tex.).[2]

The United States relies on evidence submitted with its Motion for Partial Summary Judgment, including Garry Craighead's guilty plea and a statement of undisputed facts. In his Response, Garry Craighead disputes some of the Government's undisputed facts (docket no. 192 at 7). He states that he did own CCM&D and acted as Director of Marketing and Promotion of CCM&D, but asserts that he was never paid for prescriptions, and that he and CCM&D never referred patient prescriptions to any pharmacy, including Vidor and Family Pharmacies. *Id.* He further attempts to challenge whether he in fact violated the AKS by arguing that he and CCM&D had no ability to refer prescriptions and that the payments were made pursuant to a valid marketing agreement covered by a safe harbor provision in the AKS. *Id.* at 7-8. He provides an Affidavit in support of his assertions. Docket no. 192-1.[3]

However, the Government correctly notes that Craighead is estopped by his guilty plea from re-litigating an issue in a subsequent civil case based on the same facts. In *Brazzell v. Adams*, 493 F.3d 489 (5th Cir. 1974), the Fifth Circuit held that collateral estoppel applies to facts in issue to a defendant's criminal conviction and applies equally where a prior criminal adjudication was based on a jury verdict or a guilty plea. *See also State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 383-84 (5th Cir. 1997) ("our case law has invoked a plea of guilty as a ground for collateral

---

[2] The United States is also pursuing an FCA Claim against Haney, Gray, Vidor Pharmacy, and Family Pharmacy related to the scheme. *United States v. Haney, et al.*, 1:17-CV-1125-SS (W.D. Tex.). According to a November 2018 status report filed in the case, the parties are nearing a final settlement agreement.

[3] He further challenges the Government's reliance on his guilty plea, noting his pending 2255 appeal. However, as noted, no appeals remain pending at the Fifth Circuit at this time.

estoppel" and "other circuits agree"); *Brewer v. O'Hara*, 759 F.2d 1117, 1128 (3d Cir. 1985) (Sloviter, J., dissenting) ("[T]here seems to be almost no deviation from the general principle that when a defendant has pled guilty in a federal criminal action the defendant will be estopped in a subsequent civil suit by or against the United States government or its agencies from contesting issues encompassed by the prior guilty plea."). Thus, "an affidavit that conflicts with the affiant's prior sworn testimony, including a prior guilty plea, is insufficient to avoid the application of collateral estoppel." *Kariuki v. Tarango*, 709 F.3d 495, 507 (5th Cir. 2013).[4]

As noted, Craighead pled guilty to Counts One and Two of his federal criminal information, with Count One being a count for violations of the AKS for "willful solicitation and receipt of remuneration for referring individuals for services and items payable under a federal health care benefits program in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A)(B)." MSJ Ex. 1. The Factual Basis for Craighead's guilty plea states that Craighead "organized and involved himself in a number of health care related entities," including CCM&D Consulting, that derived substantial revenue from health care claims filed with Labor's workers' compensation programs. *Id.* Factual Basis ¶ 7. It states that CCM&D was Craighead's marketing/consulting company through which he solicited federal employees to utilize health care providers recommended by himself,

---

[4] The FCA also includes an estoppel provision as follows:

Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

31 U.S.C. § 3731(e). The Government invokes § 3731(e), but provides no briefing on whether Craighead's criminal proceeding charged "fraud or false statements" within the meaning of this provision. *See United States v. Nowak*, No. 17C4887, 2018 WL 4205540, at *2 (N.D. Ill. Sept. 4, 2018) (concluding that charges under the AKS did not charge fraud or false statements). The Court therefore does not rely on § 3731(e).

referred federal employees to certain health care providers, negotiated patient referral agreements with certain health care providers, and received illegal remuneration payments from the health care providers. *Id.* ¶ 11.

The Factual Basis further provides that Craighead, individually and through CCM&D, courted employees of the BOP, the Army, VA, Postal Services, Border Patrol, and other federal agencies to utilize clinics recommended by him and, as a result, the clinics developed and maintained a substantial flow of federal employee patients insured by Labor's health care benefit programs. *Id.* ¶ 15. It further states that "Craighead devised a scheme to defraud Labor's workers' compensation health care benefit programs for federal workers by knowingly and willfully soliciting and receiving illegal remuneration from health care providers in return for referring federally insured worker patients for goods, services, and items that would be paid for by Labor's workers' compensation health care benefit programs in violation of Title 42, United States Code, Section 1320a-7b(b)(1), by causing the health care providers to offer and pay the remuneration in violation of Title 42, United States Code, Section 1320a-7b(b)(2), and by aiding, abetting, and causing the health care providers to file false claims with Labor's workers' compensation health care benefit programs in violation of Title 18, United States Code, Section 287, which claims were false because they resulted from violations of Title 42, United States Code, Section 1320-7b(b)." *Id.* ¶ 16.

The Factual Basis further states that, as part of the scheme, the health clinics, hospitals, surgical facilities, pharmacies, other providers of health care, and their owners and operators: a. Agreed to pay illegal remuneration to Defendant Craighead for patient referrals; b. Filed false claims with Labor's workers' compensation health care benefit programs for federally insured worker patients referred by Defendant Craighead because of violations of Title 42, United States Code,

Section 1320a-7b(b), and collected payments from Labor; and c. Paid portions of the money obtained from Labor to Defendant Craighead as illegal remuneration in violation of Title 42, United States Code, Section 1320a-7b(b) in fulfillment of their agreements. *Id.* ¶ 18.

Craighead is estopped from controverting these facts via his Affidavit. The Court thus turns to an analysis of whether summary judgment is proper as to Count Two. An FCA claim consists of four elements: (1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (*i.e.*, that involved a claim). *Solvay Pharmaceuticals*, 871 F.3d at 324.

**(1) Whether Defendants caused a false claim to be submitted**

It is undisputed that a request for payment submitted to the FECA program is a claim under the FCA. 31 U.S.C. § 3729(b)(2) (a claim includes direct requests to the government for payment as well as reimbursement requests made to the recipients of federal funds under federal benefit programs). The Government's theory of FCA liability underlying this motion is that Craighead and CCM&D caused false claims to be submitted to FECA by Vidor and Family Pharmacies because the claims were the result of violations of the AKS, and thus should not have been paid. The allegations are set forth in paragraphs 208 to 210 and 219 to 234 of the Complaint in Intervention.

Garry Craighead was a chiropractor who organized and operated medical and rehabilitation clinics known as the Union Treatment Centers and operated CCM&D, a marketing/consulting company that marketed UTC's services. His companies treated injured workers covered by the federal workers' compensation program (FECA), administered by DOL-OWCP. The Complaint alleges that, in exchange for prescription referrals, Vidor and Family Pharmacies agreed to make

monthly payments to CCM&D for sham services that in reality were only prescription referrals. Docket no. 26 ¶¶ 209, 223. The payments varied each month and were based on the pharmacies' calculated profit on the reimbursed referred prescriptions. *Id.* ¶ 225.

The summary judgment evidence shows that Craighead began referring prescriptions to Vidor and Family Pharmacies in September 2011 and continued making referrals until at least January 2014. The referred patients worked for federal agencies. Haney and Gray took the referrals, and Vidor and Family Pharmacies filled the prescriptions and billed the FECA program, receiving reimbursement from DOL-OWCP. Through the Affidavit of Investigative Analyst Charles Holland, the Government has established that, from September 2011 to December 2013, Vidor and Family Pharmacies submitted to the FECA program 11,907 claims for payment based on prescriptions Craighead referred, and DOL-OWCP paid the pharmacies at least $3,478,208.15 for the referred prescriptions.

Each month, Vidor and Family Pharmacies paid Craighead a percentage of the funds they had received from DOL-OWCP for filling the referred prescriptions. All payments were made to Craighead through CCM&D, except for the final $25,000 payment in January 2014, which was wire transferred to Craighead's personal bank account. The Government alleges that Craighead used the money for personal expenses, including purchasing an aircraft. In his guilty plea, Craighead admitted the facts related to his receipt of kickbacks from Vidor and Family Pharmacies, as well as others, were true and accurate.

The Government correctly contends that a claim submitted to a federal health care program such as FECA that results from or is tainted by a kickback is a false claim under the FCA as a matter of law. Although typical claims under the FCA are those in which the claimant did not perform the

9

service for which he requests compensation or did perform the service but overcharged the government, the FCA also covers accurate claims submitted for services actually rendered when the government has conditioned payment of a claim upon compliance with certain laws and the claimant submits the claim in violation of that law. *United States ex re. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 662 (S.D. Tex. 2013); *see also United States v. Catholic Health Initiatives*, 312 F. Supp. 3d 584 (S.D. Tex. 2018) (legal falsity may be implied where a party submits a claim to the government and fails to disclose a violation of relevant statutes, regulations, or contract requirements that are material conditions of payment). In the healthcare context, the AKS commonly serves as an FCA predicate, and it expressly provides that "a claim that includes items or services resulting from a violation of this section [the AKS] constitutes a false or fraudulent claim for purposes of subchapter III of Chapter 37 of Title 31 [the False Claims Act]."). 42 U.S.C. § 1320a-7b(g).[5] Thus, if claims are submitted in violation of the AKS, they are considered false claims under the FCA as a matter of law.

The Government contends that although Craighead did not submit the false claims himself, he knowingly caused the pharmacies to present false claims for payment in violation of the FCA as part of the kickback scheme. The FCA allows claims to proceed against parties who can fairly be

---

[5] This provision was added to the AKS in 2010 as part of an overall effort to "strengthen[] whistleblower actions based on medical care kickbacks" and "to ensure that *all* claims resulting from illegal kickbacks are considered false claims for the purpose of civil action[s] under the False Claims Act." *United States ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d 89, 96 (3d Cir. 2018) (quoting 155 Cong. Rec. S10852, S10853-54 (daily ed. Oct. 28, 2009) (Sen. Kaufman).

Claims induced by kickbacks are false if "the provider certified compliance with the kickback statute in submitting a claim." *United States ex rel. Colquitt v. Abbott Labs*., 858 F.3d 365, 371 (5th Cir. 2017); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997). However, even where there is no express certified compliance, an implied certification of compliance is sufficient for FCA liability. *Abbott Labs*, (citing *Universal Health Services., Inc. v. United States ex rel. Escobar*, ⎯⎯ U.S. ⎯⎯, 136 S.Ct. 1989, 2001 (2016)); *see also Guilfoile v. Shields*, 913 F.3d 178 (1st Cir. 2019) (listing cases to support its holding that, given the plain language of § 1320a-7b(g), courts need not inquire whether the entity submitting the claim had certified its compliance with the AKS).

said to have caused a claim to be presented to the government. "[I]f the government proves that a kickback arrangement existed and that the kickback arrangement was a substantial factor in bringing about [a party's] submissions to Medicare and that [the] submissions were a normal consequence of the situation created by the kickback arrangement," a defendant may be found to have "caused" the submissions. *United States ex rel. Freedman v. Suarez-Hoyos*, No. 8:04-cv-933-T-24 EAJ, 2012 WL 4344199, at *8 (M.D. Fla. Sept. 21, 2012).

Haney and Gray pled guilty to paying kickbacks to Craighead in violation of the AKS in December 2016 and April 2017, respectively. Judge Sparks ordered them to pay $813,560 in restitution, the amount they paid Craighead in kickbacks. The Government submits undisputed evidence that, based on the referrals from Craighead, Vidor and Family Pharmacies submitted to the FECA program 11,907 false claims for payment. MSJ App. ¶ 49, Ex. 8 (docket nos. 184, 185). Thus, the Government has provided undisputed evidence that Vidor and Family Pharmacies submitted 11,907 claims based on referrals from Craighead and his companies, and that these claims were false as a matter of law because they arose from and were tainted by the kickbacks Haney and Gray paid to CCM&D and Craighead for the referrals.

In his response, Craighead attempts to refute the Government's position that the claims were false because they were the result of an illegal kickback scheme. He asserts that he was never paid for prescriptions and never referred patient prescriptions to any pharmacy, including Vidor or Family. Docket no. 192 at 7. Rather, he contends that he "had no privilege to refer prescriptions." *Id.* at 8. He also asserts that CCM&D "at no time referred individuals or prescriptions to Vidor or Family" and that CCM&D was paid under a marketing agreement contract with Vidor and Family to provide marketing services as well as compliance and consulting needs." *Id.* Craighead asserts that

11

such marketing agreements are industry standard in the medical field, and that he and CCM&D qualify for a safe harbor provision of the AKS. Craighead states that his attorney instructed him to enter a guilty plea to obtain a settlement and stop harassment, without informing him that his marketing agreements were subject to the safe harbor provision, and when he became aware of this, he attempted to withdraw his plea and fired his attorney. He asserts that questions of fact remain as to who referred prescriptions to Vidor and Family when Craighead and CCM&D are not medical doctors and cannot prescribe or refer patients and whether he was in fact entitled to the safe harbor provision.

However, as noted above, Craighead has exhausted his direct appeal and the Fifth Circuit denied COA on his 2255 motion. Craighead is collaterally estopped from re-litigating his conviction or controverting the factual basis for the plea agreement. Craighead admitted to engaging in the kickback scheme with Vidor and Family Pharmacies, and admitted that he aided and abetted and caused Vidor and Family Pharmacies to file false claims. Haney and Gray have also pled guilty to the kickback scheme. Thus, the Government has conclusively proven that Craighead caused false claims to be submitted.

**(2) Whether the false claims were material**

The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of property or money." 31 U.S.C. § 3729(b)(4). The Supreme Court has not expressly decided whether § 3729(a)(1)(A)'s materiality requirement is governed by § 3729(b)(4) or derived directly from the common law, but has noted that "[u]nder any understanding of the concept, materiality 'look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'" *Universal Health Services, Inc. v. United States ex rel.*

*Escobar*, 136 S. Ct. 1989, 2003 (2016).

The Government provides the Affidavit of Jennifer Valdivieso, Deputy Director for DFEC Program Integrity for DOL-OWCP, who states that the FECA program does not cover and would not pay claims for services or supplies that result from a kickback or bribe, and such claims are not eligible for reimbursement under federal law and FECA program rules. MSJ Ex. 9. She further states, "Had DOL-OWCP known that the claims submitted by Vidor Pharmacy and Family Pharmacy in this case resulted from kickbacks that these pharmacies paid to Garry Craighead or others in exchange for referrals, DOL-OWCP would not have paid those claims" and it "regards the entire amount that it paid to the pharmacies as a loss because the claims they submitted for payment were not eligible for reimbursement and should not have been paid." *Id.*

The Government thus asserts that the failure to inform DOL-OWCP that the claims violated the AKS was a material omission that meets the FCA's materiality standard. The Court agrees. *See United States ex rel. Marcus v. Hess*, 317 U.S. 537, 543 (1943) (contractors' misrepresentation that they satisfied a non-collusive bidding requirement for federal program contracts violated the False Claims Act because "[t]he government's money would never have been placed in the joint fund for payment to respondents had its agents known the bids were collusive"); *U.S. ex rel. Wood v. Allergan, Inc.*, No. 10-CV-5645 (JMF), 2017 WL 1233991, at *28 (S.D.N.Y. Mar. 31, 2017) (compliance with the AKS is a "'material' condition of payment" because the AKS is "a felony offense punishable by up to five years in prison"—not a technical regulatory violation—and the law now provides that a claim tainted by the AKS is a false or fraudulent claim for FCA purposes"); *see also United States v. Am. at Home Healthcare & Nursing Servs., Ltd.*, No. 14-CV-1098, 2017 WL 2653070, at *8 (N.D. Ill. June 20, 2017) (rejecting post-*Escoba*r materiality challenge in case

13

alleging AKS violations). Thus, the United States has established materiality.

**(3) Whether the false claims caused the government to pay out money**

The Government has provided undisputed evidence that the false claims caused the government to pay out money on the claims totaling at least $3,478,208.15.[6] The Government notes that, even if prescriptions were filled, the full amount paid by the DOL-OWCP represents its damages because no part of the prescription cost was eligible for reimbursement if it was the result of a kickback. Thus, this element is satisfied.

**(4) Whether the Government has proved that false claims were made or carried out with the requisite scienter**

The FCA reaches "any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government." *Peterson v. Weinberger*, 508 F.2d 45, 52 (5th Cir. 1975). The FCA does not require "proof of specific intent to defraud." 31 U.S.C. § 3729(b)(1)(B). But it does require guilty knowledge or guilty intent, specifically that the false claim be submitted knowingly. 31 U.S.C. § 3729(a)(1), (b)(1); *Peterson*, 508 F.2d at 53. It defines the terms "knowing" and "knowingly" to mean that a person, "with respect to information – (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1).

The Factual Basis for Craighead's plea provides the necessary evidence of scienter as to Craighead. Although the FCA does not require specific intent to defraud, Craighead admitted to this

---

[6] The Government has submitted certified claims data showing that DOL-OWCP paid over $3.6 million, but limits its damages figure to the amount of reimbursement that Haney and Gray admitted to receiving for the Craighead-referred prescriptions.

heightened level of culpable knowledge in his guilty plea. Specifically, he admitted that he devised a scheme to defraud Labor's workers' compensation health care benefit programs for federal workers by knowingly and willfully soliciting and receiving illegal remuneration from health care providers in return for referring federally insured worker patients for goods, services, and items that would be paid for by Labor's workers' compensation health care benefit programs in violation of Title 42, United States Code, Section 1320a-7b(b)(1), by causing the health care providers to offer and pay the remuneration in violation of Title 42, United States Code, Section 1320a-7b(b)(2), and by aiding, abetting, and causing the health care providers to file false claims with Labor's workers' compensation health care benefit programs in violation of Title 18, United States Code, Section 287, which claims were false because they resulted from violations of Title 42, United States Code, Section 1320-7b(b). Factual Basis ¶ 16.

Craighead agreed that, as part of the scheme to defraud that he knowingly and willfully devised, the involved pharmacies would file false claims and collect payments from Labor. Factual Basis ¶ 18. This satisfies the scienter requirement as to Craighead. *See United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 244 (3d Cir. 2004) (where defendant came up with marketing program that it knew to be in violation of the AKS and targeted participants in a federal health care benefit program and it was a fair inference from the facts that defendant was aware that participants could not maintain eligibility without certifying their compliance with federal health law, jury could reasonably infer that defendant must have known that provider would falsely certify itself to be in compliance with federal law in carrying out scheme). Although Craighead attempts to undermine his AKS conviction by claiming advice of counsel and the safe harbor provision for marketing agreements, he cannot collaterally attack the factual basis of his plea, and he fails to refute the

Government's evidence of scienter.

**Scienter of CCM&D**

The United States has provided sufficient undisputed evidence to obtain summary judgment on liability as to Garry Craighead. However, the Court finds that it has insufficiently established its entitlement to summary judgment against CCM&D.

As noted, the FCA reaches "any person" who knowingly causes a false claim to be made. The Government alleges that CCM&D was an active participant in the kickback scheme, being the vehicle through which referrals were made and most kickback payments accepted. However, a company such as CCM&D can act only through individuals and "cannot act or have a mental state by itself." *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 848 F.3d 366, 372 (5th Cir. 2017). The United States has failed to articulate the standard upon which it seeks to impute Craighead's knowledge to CCM&D.

In *United States v. Ridglea State Bank*, 357 F.2d 495 (5th Cir. 1966), the Fifth Circuit considered whether the knowledge of the executive vice president and president of the banks could be imputed to the banks for FCA liability, given that the FCA imposes more than liability for out-of-pocket losses caused by the employee's fraud. The Court approved corporate liability under the FCA if the officer was acting within the scope of his authority *and* for the benefit of the corporation. *United States v. Hangar One, Inc.*, 563 F.2d 1155, 1158 (5th Cir. 1977) ("In *United States v. Ridglea State Bank*, 357 F.2d 495 (5th Cir. 1966), this court indicated that a corporation will be liable for violations of the False Claims Act if its employees were acting within the scope of their authority and for the purpose of benefitting the corporation."). It is undisputed that Garry Craighead was the owner of CCM&D and its Director of Marketing. However, the Government has not shown

that Craighead acted with the purpose of benefitting CCM&D, and has in fact asserted that Craighead used the monies for his own personal benefit.

Nor has the United States asserted that *Ridglea* does not apply or that intent-to-benefit is not a required element. In a recent case, the Fifth Circuit discussed *Ridglea*, noting that *Ridglea* had held "that the knowledge or guilty intent of an agent not acting with a purpose to benefit his employer, will not be imputed to the employer, when the latter is sought to be held liable under a statute requiring knowledge or guilty intent." *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 350 (5th Cir. 2013). In *Vavra*, the Fifth Circuit noted that it has "elaborated little on the holding in *Ridglea* and has not applied it to any other civil statute. *Id.* at 350-51. It further noted that, since *Ridglea*, "the Supreme Court has provided additional guidance in evaluating the elements required to assert vicarious liability under federal civil suit provisions," and that, "we must construe federal civil remedies statutes in harmony with the common law apparent authority rule for attributing vicarious liability, unless Congress signals its intent to adopt a different approach." *Id.* at 351-52.

The *Vavra* Court distinguished *Ridglea* and the FCA provisions from the AKA provisions at issue in *Vavra*, in part because the penalty was not mandatory. Thus, the Fifth Circuit distinguished *Ridglea* and questioned its continuing validity, but did not overrule it, calling it "our court's precedent." *Id.* at 352 n.12 ("As the government references, other courts have read *ASME* and subsequent amendments to the FCA to cast doubt on the act-to-benefit requirement even in the FCA context in which we distilled it. . . . *Ridglea* is our court's precedent in FCA cases. But for the reasons outlined above, *Ridglea* does not control in the AKA's distinctive statutory context."); *see also United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641 (N.D. Miss. 2015) (noting

that *Vavra* called into question the continuing viability of *Ridglea* but called it "our court's precedent in FCA cases" without overruling it).

If the Government is attempting to establish liability under some sort of direct or vicarious liability theory not subject to *Ridglea*, it has not made that clear in the motion or in its supporting evidence. Accordingly, the motion for summary judgment is denied as to CCM&D, without prejudice to filing a supplemental motion on this issue.[7]

**Damages**

The Government asserts that its damages are $3,478,208.15, the full amount it paid out on false claims submitted by Vidor and Family Pharmacies that were tainted by kickbacks and therefore ineligible for reimbursement. The Government relies on *United States v. Rogan*, 517 F.3d 449 (7th Cir. 2008), in which the Seventh Circuit affirmed treble damages based on the full amount of Medicare reimbursements to a defendant who had obtained the patients in violation of the AKS.[8] As the Northern District of Illinois district court explained, "damages are equivalent to the entirety of what the government paid out, because [the defendant's] false claims obscured that [the claims] were not eligible to obtain reimbursement in the first place" because "spending was conditioned upon compliance with the AKS." *United States v. Novak*, No. 17C4887, 2018 WL 4205540, at *4 (N.D.

---

[7] The Court notes that it previously denied without prejudice the Government's motion for default judgment as to the Creekside Defendants to prevent possible inconsistent judgments. The proper standard of imputing knowledge to those defendants will also be an issue in deciding that motion if and when it is re-urged.

[8] The Government also relies on *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir. 1975), in which the FCA claim was based on the fact that the services were not covered services because they falsely certified that the physician's services were personally rendered by him or under his personal direction, and the actual provider of the services was not certified and could not have been paid. The Fifth Circuit did note that "the services billed were plainly not 'covered' services, and the Government thus paid on the basis of the false claims presented," but it did not expressly hold that the damages were the full amount paid even though some service was rendered, as the Government asserts in its parenthetical. That statement was addressing the defendant's argument that he had not in fact violated the FCA by presenting false claims. However, the Fifth Circuit did affirm the judgment, which awarded double damages on the amount the Government paid on 120 false claims, thus supporting the Government's asserted damages model.

Ill. Sept. 4, 2018); *see also United States ex rel. Freedman v. Suarez-Hoyos*, No. 8:04-CV-933-T-24 EAJ, 2012 WL 4344199 (M.D. Fla. Sept. 21, 2012) (rejecting defendant's argument that the Government suffered no damages because there was no dispute that the services that were paid for were in fact performed, noting that *Rogan* is the case most on point, and holding "the Government's damages resulting from the payment of [claims that were tainted by a kickback arrangement and that would not have been paid had the Government known the truth] equals the full amount that Medicare paid."). The Court agrees that the measure of damages is the full amount paid on the ineligible claims.

These damages are subject to mandatory trebling under the FCA. 31 U.S.C. § 3729(a). Accordingly, the Government is entitled to partial summary judgment against Garry Craighead in the amount of $10,434,624.45 for Count Two.

## Conclusion

The Government's motion to strike (docket no. 194) is DENIED.

The Government's motion for partial summary judgment (docket no. 183) is GRANTED IN PART and DENIED IN PART.

Summary judgment is granted on Count Two against Garry Craighead, and the United States is awarded treble damages against Garry Craighead in the amount of $10,434,624.45.

Summary judgment is denied as to CCM&D Consulting, LLC, without prejudice to the Government's filing a supplemental motion for summary judgment to address the basis for imputing knowledge to CCM&D Consulting, LLC under the FCA. If the United States seeks to file a supplemental motion, such motion must be filed no later than **February 27, 2019**. If the United States no longer wishes to assert claims against CCM&D or the Creekside entities, it shall notify the

Court by that same date.

The United States shall also file an Advisory with an update on the status of the criminal proceedings against Christine Craighead no later than **February 27, 2019**.

SIGNED this 12th day of February, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE